UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RETREAT PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 5608 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| KA DESIGNWORKS INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Retreat Properties, LLC ("Plaintiff") brings this lawsuit against KA Designworks Inc. ("KA") and Kenneth Adler ("Adler") (collectively, the "Defendants"), arising out of a dispute related to Defendants' architectural design work on a home to be constructed in Aspen, Colorado. (R. 22, Second Am. Compl. ¶¶ 8-80.) Defendants move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (R. 23, Mot.) For the reasons stated below, Defendants' motion to dismiss is denied.

## BACKGROUND

Plaintiff is an Alaska limited liability company with its principal place of business in Lincolnwood, Illinois. (R. 22, Second Am. Compl. ¶ 1.) Plaintiff's members are Michael Klein ("Klein"), who resides in Illinois, and the Klein Family Fund ("KFF"). (*Id.* ¶¶ 1-2.) KFF is also an Alaska limited liability company, and its sole member is Klein. (*Id.* ¶¶ 2-3.)

KA is a Colorado limited liability company with offices in Basalt, Colorado, and Asheville, North Carolina. (*Id.* ¶ 4; R. 23-2, Adler Decl. at 1.) KA provides architectural design services, and Adler is KA's owner and sole member. (R. 22, Second Am. Compl. ¶ 4.) Adler is a Colorado-licensed architect who resides in Colorado. (*Id.* ¶ 5; R. 23-2, Adler Decl. at 1.)

On July 17, 2015, KA entered into a contract with Plaintiff to serve as the architect for a home to be constructed on a property in Aspen owned by Plaintiff. (R. 22, Second Am. Compl. ¶ 8; R. 37-1, Klein Aff. at 1.) The contract required KA to develop and issue architectural drawings for a 7,500 square-foot residence based on a rough design provided by Plaintiff. (R. 22, Second Am. Compl. ¶ 9; R. 22-1 at 2, 14, Contract.) The contract provided that the drawings must "conform to the permit requirements for the City of Aspen, satisfying all applicable code requirements necessary to obtain a building permit[.]" (R. 22, Second Am. Compl. ¶ 9.) Plaintiff was required to pay KA $75,000 for architectural services, with no more than 80 percent of that amount being paid before the issuance of a building permit and the remaining 20 percent to be paid at the end of construction. (*Id.* ¶¶ 10, 12-13.) The contract also granted Plaintiff a "nonexclusive license" to use Defendants' architectural drawings, "provided that [Plaintiff] substantially performs its obligations" under the contract. (R. 22-1 at 4, Contract; *see also* R. 22, Second Am. Compl. ¶ 17.)

As is relevant here, the contract provided that "[a]ny claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to binding dispute resolution." (R. 22-1 at 5, Contract.) Such mediation, the contract provided, "shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures[.]" (*Id.*) The contract also provided that "[i]f the parties do not resolve a dispute through mediation," they agree that "the method of . . . dispute resolution shall be . . . [l]itigation in a court of competent jurisdiction[.]" (*Id.* at 6.)

From September 2015 through January 2016, KA allegedly performed 60 percent of its work under the contract and Plaintiff paid KA's invoices for such work. (R. 22, Second Am. Compl. ¶¶ 18-20.) In February and March 2016, Plaintiff advised Adler that KA needed to revise

its architectural drawings for Plaintiff to obtain the building permit. (*Id.* ¶¶ 21, 25.) The parties disagreed as to whether these revisions constituted additional work outside of the scope of the parties' contract or simply work within the contract's scope. (*Id.* ¶¶ 22, 26.) Plaintiff alleges that Adler stated that the project was a "bad business deal" because KA was losing money on the project, and that KA had made a mistake by entering into the contract. (*Id.* ¶¶ 23, 26.) Plaintiff, however, allegedly continued to pay KA, and KA continued to perform work under the contract. (*Id.* ¶¶ 24-25, 27-29.)

In the summer of 2016, Plaintiff expressed concerns to KA about delays on the project, and KA later issued an invoice representing that it had completed 80% of the work. (*Id.* ¶ 29.) Plaintiff paid the invoice, and KA then allegedly failed to provide Plaintiff with a final set of architectural drawings that Plaintiff needed to solicit bids for construction contractors. (*Id.* ¶¶ 29-30.) Plaintiff also alleges that KA refused to provide architectural plans for electrical work on the project although KA was required to do so under the contract, and KA informed Plaintiff that it needed to hire an electrical engineer to provide those plans. (*Id.* ¶ 31.)

On December 16, 2016, Plaintiff allegedly notified KA that it had breached the parties' contract, and that KA should correct its breaches. (*Id.* ¶ 32.) In response, KA allegedly requested a flat fee of $4,000 in addition to the payments set forth under the contract, and the parties executed an "Added Work Agreement" that listed work that KA was required to complete pursuant to that agreement. (*Id.* ¶ 33.) KA issued an invoice to Plaintiff on January 3, 2017, which Plaintiff alleges lacked any support for the amounts invoiced. (*Id.* ¶¶ 33-34.) KA then allegedly terminated the contract, claiming that it was justified in doing so for Plaintiff's failure to pay the invoice. (*Id.* ¶¶ 34-35.) In addition to terminating the contract, KA allegedly notified Plaintiff that it could not use KA's architectural drawings or other KA work product to complete

the project. (*Id.* ¶ 36.) Plaintiff allegedly paid KA more than $67,000 up to that point and had

still not acquired a building permit when KA terminated the parties' relationship. (*Id.* ¶ 37.)

Plaintiff claims that after KA had ended the parties' relationship, Plaintiff discovered other

deficiencies with KA's performance and discovered that KA falsely represented the percentage

of its work that had been completed. (*Id.* ¶¶ 39-42.)

KA sent all invoices for architectural work to Plaintiff's offices in Illinois, and Plaintiff

paid the invoices from Illinois. (*Id.* ¶ 18; R. 42-1 at 7-23, Invoices.) Klein received all

communications from Adler and KA concerning the project at his Illinois home or office, and he

regularly communicated with Adler about the project from July 2015 through February 2017.

(R. 37-1, Klein Aff. at 2-4.) Klein also signed the parties' contract and the Added Work

Agreement on Plaintiff's behalf in Illinois. (*Id.* at 3.) KA, however, does not have any offices or

employees in Illinois. (R. 23-2, Adler Decl. at 1-2.) Adler—on KA's behalf—signed the contract

in Colorado, negotiated the contract almost entirely from either his office or home in Colorado,

and conducted no contract negotiations in Illinois. (*Id.* at 2.) Adler attended no meetings related

to the project in Illinois, and his communications with Plaintiff about the project were

exclusively sent from Colorado. (*Id.*)

## PROCEDURAL HISTORY

On May 25, 2017, Plaintiff filed a complaint in the Circuit Court of Cook County,

Illinois, against Defendants. (R. 1 at 6, State Court Compl.) On August 1, 2017, Defendants

removed the case to this Court based on diversity jurisdiction. (R. 1, Notice of Removal at 2-3.)

Plaintiff then amended the complaint twice, and its second amended complaint—filed on

December 12, 2017—is now the operative complaint. (R. 19, Am. Compl.; R. 22, Second Am.

Compl.) Plaintiff brings four counts against Defendants: (1) a count for declaratory judgment,

4

which seeks a declaration that Plaintiff has a contractual right to use KA's architectural plans to finish the project (Count I); breach of contract against KA (Count II); fraud against KA and Adler (Count III); and a claim for rescission of the contract in the alternative to Counts II and III (Count IV). (R. 22, Second Am. Compl. ¶¶ 45-80.)

On December 27, 2017, Defendants moved to dismiss the second amended complaint for lack of personal jurisdiction. (R. 23, Mot.) First, Defendants argue that they do not have sufficient contacts with Illinois to establish personal jurisdiction. (*Id.* at 3-9.) Second, Defendants contend that Plaintiff failed to engage in mediation, which is a condition precedent to filing suit pursuant to the parties' contract. (*Id.* at 9-10.) Finally, Defendants argue that venue is improper in this District and that the Court should transfer this case to the District of Colorado. (*Id.* at 10.)

In response, Plaintiff maintains that Defendants have sufficient contacts with Illinois to establish personal jurisdiction because "Illinois is the place where [Plaintiff] negotiated, entered into[,] and performed (via payment) its duties" under the contract. (R. 42, Am. Resp. at 5.) Plaintiff also points to other conduct that connects Defendants with Illinois for purposes of personal jurisdiction, such as making telephone calls, sending documents, and sending emails to Plaintiff in Illinois. (*Id.* at 5-6.) Plaintiff argues that the Court should give little weight to Adler's affidavit in support of Defendants' motion to dismiss, because it "consists mainly of self-serving, conclusory statements[.]" (*Id.* at 7.) Plaintiff also maintains that it has mediated the dispute with Defendants and therefore satisfied any conditions precedent to litigation. (*Id.* at 8-9.) Finally, Plaintiff contends that venue is proper in this District because a substantial part of the events giving rise to its claims occurred here and because the Court has personal jurisdiction over Defendants. (*Id.* at 9-10.)

On February 7, 2018, the parties engaged in mediation with a private mediator, but could not reach a settlement. (R. 28, Report on Mediation at 1.) The parties agreed to continue settlement negotiations through the months that followed, but again were unable to settle. (*Id.* at 2; R. 30, Report on Settlement at 1-2; R. 36, Min. Entry.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) tests whether the Court has personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). "Once a defendant has moved for a dismissal based on the lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citation and internal quotation marks omitted). An evidentiary hearing is required if facts material to a determination of personal jurisdiction are in dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Fuchs v. Menard, Inc.*, No. 17-CV-01752, 2017 WL 4339821, at *2 (N.D. Ill. Sept. 29, 2017) (deciding 12(b)(2) motion without an evidentiary hearing because "no facts that are necessary to decide the issue were in dispute and neither side requested an evidentiary hearing"). "Where, as here, the district court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citation and internal quotation marks omitted).

The parties may submit affidavits to support their arguments for personal jurisdiction, and "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). The Court accepts as true "any facts contained in the defendant's

6

affidavits that remain unrefuted by the plaintiff." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). The Court, however, also accepts as true "all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

## ANALYSIS

### I.      Personal Jurisdiction

Personal jurisdiction over a defendant "can be either general or specific, depending on the extent of the defendant's contacts with the forum state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "General jurisdiction looks to the defendant's 'continuous and systematic' contacts with a state, whether or not the action is related to the contacts." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citation omitted), *reh'g and suggestion for reh'g en banc denied* (Nov. 14, 2017); *see also Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (observing that "we addressed the distinction between general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction" and "[a]s to the former, we held that a court may assert jurisdiction over a foreign corporation to hear any and all claims against it only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State" (alterations, citation, and internal quotation marks omitted)). Specific jurisdiction, on the other hand, "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Brook*, 873 F.3d at 552 (citation omitted).

Defendants argue that the Court lacks both general and specific jurisdiction. (R. 23, Mot. at 8-9.) Plaintiff does not dispute that the Court lacks general jurisdiction, and instead maintains that the Court has specific jurisdiction over Defendants. (R. 42, Am. Resp. at 3 ("Federal courts recognize general and specific jurisdiction over out-of-state defendants like KADW and Adler.

The latter applies here.").) Plaintiff, therefore, has not carried its burden to establish general jurisdiction over the Defendants.[1] *See Kipp*, 783 F.3d at 697.

With respect to specific jurisdiction, courts in a diversity action such as this one look to state law in determining the bounds of their jurisdiction over a party. *Brook*, 873 F.3d at 552; *see also Purdue Research Found.*, 338 F.3d at 779 ("A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction."). The Illinois long-arm statute, 735 ILL. COMP. STAT. 5/2-209(c), "permits the court to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *Brook*, 873 F.3d at 552. "Thus, the state statutory and federal constitutional requirements merge." *Id.*

For the Court to exercise specific personal jurisdiction over Defendants, the Court must "determine whether [they have] sufficient minimum contacts" with Illinois "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he contacts supporting specific jurisdiction can take many different forms." *uBID, Inc.*, 623 F.3d at 426. Such contacts,

---

[1] In any event, the Court agrees with Defendants that it cannot exercise general jurisdiction over them. Plaintiff's basis for personal jurisdiction over Defendants is that they have contacts with Illinois by entering into the contract with Plaintiff—an entity with its offices in Illinois—to provide architectural services, and because KA maintains a website that "reveals [its] expansive marketing efforts beyond Colorado." (R. 42, Am. Resp. at 5-7.) Defendants have no offices in Illinois, and their public website along with a contract with an entity whose offices are in Illinois, without more, is insufficient to establish general jurisdiction over Defendants. *See Tamburo v. Dworkin*, 601 F.3d 693, 701-02 (7th Cir. 2010) (rejecting exercise of general jurisdiction although the defendants maintained public websites and one defendant had no offices in Illinois and minimal sales in Illinois); *Matlin v. Spin Master Corp.*, No. 17 C 07706, 2018 WL 3496088, at *2 (N.D. Ill. July 20, 2018) ("[A]ctivities such as the sale of consumer goods by a foreign company to a resident within the forum without more, such as a principal place of business, are more akin to sporadic contacts and are insufficient to establish general jurisdiction." (citation and internal quotation marks omitted)); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 915-16 (N.D. Ill. 2017) (rejecting general jurisdiction over defendant that "(1) [was] registered to do business in Illinois; (2) [held] an Illinois Residential Mortgage License; (3) originated over $215 million in loans in Illinois in 2016; (4) [operated] at least thirteen branches in Illinois; and (5) employ[ed] dozens of people in its Illinois branches").

however, must "be directly related to the conduct pertaining to the claims asserted." *Brook*, 873 F.3d at 552. Specific jurisdiction consists of "three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citations omitted). Plaintiff argues that the Court has specific jurisdiction over Defendants because they transact business in Illinois, entered into and performed a contract in Illinois, and because they committed a tort in Illinois. (R. 42, Am. Resp. at 3-4.)

Looking first at whether Defendants availed themselves of the privilege of conducting business in Illinois, the "purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on random, fortuitous, or attenuated contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *N. Grain Mktg., LLC*, 743 F.3d at 492-93 (citation and internal quotation marks omitted). "[C]ontracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Id.* at 493 (citation omitted). Rather, the Court must apply "a context-sensitive analysis of the contract, examining prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.* (citation and internal quotation marks omitted).

"Sustained contact over the course of several months is not random, fortuitous, or attenuated," and "[e]ven if the contact takes place by telephone or email, it may create a substantial connection between the defendant and the forum state[.]" *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008) (citation and internal quotation

marks omitted); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[W]e have upheld the assertion of jurisdiction over defendants who have purposefully reached out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State[.]" (alteration, citation, and internal quotation marks omitted)). Ultimately, the key inquiry is whether the defendant "should have reasonably anticipated being haled into court in Illinois[.]" *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 764 (7th Cir. 2008); *see also Tianjin Universal Link Enters., Ltd. v. Midwest Contracting Concepts, Inc.*, No. 16 C 08352, 2017 WL 4157702, at *3-7 (N.D. Ill. Sept. 19, 2017) ("Essentially, we must assess the contractual situation and ask whether the defendant so structured its business affairs that it reasonably could have predicted that it would be answerable in a court situated in the forum state for its actions with respect to these transactions." (alteration, citation, and internal quotation marks omitted)).

For example, in *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757 (7th Cir. 2008), the court ruled that personal jurisdiction was properly exercised over the defendant because although the defendant was based in Arkansas and contracted with the plaintiff to build a medical office building in Arkansas, the parties' relationship was not unilateral and the contemplated future consequences of their contract involved significant administrative work occurring in Illinois. *Citadel Grp. Ltd.*, 536 F.3d at 763-64. The court reasoned that "[w]hile the formation of the contract alone [was] not sufficient to confer personal jurisdiction on [the defendant], the parties had continuing obligations and repeated contacts" such that the contacts with Illinois crossed "the threshold from offending due process to sufficient minimum contacts." *Id.* at 763; *see also Lukas Mktg. v. Prince George's Cmty. Coll.*, No. 1:13-CV-04062, 2013 WL 5818592, at *6 (N.D. Ill. Oct. 29, 2013) (ruling that the court had

personal jurisdiction over the defendant because although the defendant was located outside of Illinois and entered into a contract with the plaintiff to plan a trip in Alaska, "the purpose of the parties' contract was to plan that trip from Illinois" and "[t]he parties clearly contemplated a relationship for six months" with "significant phone, e-mail, and mail contacts" in Illinois).

This case bears a striking resemblance to *Citadel*. Plaintiff's offices are in Illinois, and its member responsible for Plaintiff's operations—Klein—is an Illinois resident. (R. 37-1, Klein Aff. at 1-4.) Defendants were aware that they were dealing with an Illinois business as the parties' contract lists an Illinois address for Plaintiff, and Adler sent the proposed "Added Work Agreement" that is a subject of this lawsuit to Plaintiff's Illinois address. (R. 22, Second Am. Compl. ¶¶ 32-33; R. 22-1 at 2, Contract; R. 22-1 at 14-16, Added Work Agreement.) The contract was negotiated by Klein on behalf of Plaintiff largely in Illinois by way of telephone or email, and Adler sent KA's proposal for architectural work to Plaintiff's Illinois address. (R. 37-1, Klein Aff. at 1-3.) Klein signed the parties' contract in Illinois on behalf of Plaintiff, and the parties were in regular communication about the project from July 2015 through February 2017, which included "multiple phone calls, emails[,] and weekly status reports from Adler (for [KA])" to Klein who was located at either Plaintiff's Illinois office or his Illinois residence. (*Id.* at 3-4.) KA also sent monthly invoices to Plaintiff's Illinois office from September 2015 through January 2017.[2] (*Id.* at 4; R. 42-1 at 7-23, Invoices.)

---

[2] Adler maintains that none of the invoices were physically mailed to Plaintiff's Illinois address, and that they were instead emailed to Klein. (R. 43 at 14, Adler Aff.) The Court, however, must resolve all factual disputes at this stage in Plaintiff's favor. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Additionally, the Court does not find that this dispute is material because it is undisputed that Plaintiff received and reviewed all emails in Illinois such that Defendant's emails are "contacts" with Illinois for purposes of personal jurisdiction. *See Lukas Mktg. v. Prince George's Cmty. Coll.*, No. 1:13-CV-04062, 2013 WL 5818592, at *5 (N.D. Ill. Oct. 29, 2013) (finding that emails defendant sent to the plaintiff, an Illinois resident, were contacts relevant to personal jurisdiction analysis).

Like *Citadel*, the parties' relationship was not unilateral, their contract contemplated significant administrative work from Illinois, and it resulted in Defendants' frequent communication with Klein in Illinois. *See Citadel Grp. Ltd.*, 536 F.3d at 763-64. Thus, like *Citadel*, where the defendant was an Arkansas-based contractor looking to construct an office building in Arkansas, jurisdiction is proper in Illinois although Defendants are based in Colorado and communicated with Plaintiff from Colorado about a residence to be constructed in Colorado. *See id.* The case for jurisdiction here is even more compelling than *Citadel* because in *Citadel*, the parties did not ultimately enter into an agreement, whereas here, the parties did enter into an agreement and Defendants even solicited an "Added Work Agreement" from Plaintiff after years of regular communication with Plaintiff in Illinois. *Cf. id.* at 762 ("[T]he parties' transaction never closed and, therefore, they never executed ground or space leases and never began construction of the building. In that sense, the parties' relationship was truly preliminary[.]"). The Court, therefore, concludes that Defendants purposefully availed themselves of the privilege of conducting business in Illinois and could have reasonably anticipated being haled into court in Illinois.[3] *See Felland*, 682 F.3d at 673; *Lukas Mktg.*, 2013 WL 5818592, at *6 (finding that the defendant availed itself of the privilege of conducting business in Illinois where "[t]he parties clearly contemplated a relationship for six months" with "significant phone, e-mail, and mail contacts" in Illinois); *cf. AS Engine Leasing, LLC v. Vision Airlines, Inc.*, No. 14 C 1436, 2014 WL 6461760, at *3-5 (N.D. Ill. Nov. 18, 2014) (ruling that the court lacked personal jurisdiction

---

[3] While the only claim against Adler is a claim for fraud, (R. 22, Second Am. Compl. ¶¶ 45-80), this fact does not alter the Court's conclusion as to Adler for the first prong of the jurisdictional analysis because Adler, as the sole and managing member of KA, directed KA's activities described above that were aimed at Illinois. *See Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, No. 16 CV 3676, 2017 WL 365555, at *3 (N.D. Ill. Jan. 25, 2017) (concluding that the owner and managing director of a company could not be shielded from the court's exercise of personal jurisdiction over him based on his argument that the company—and not himself in his individual capacity—had significant contacts with the forum state because he directed and facilitated the defendant corporation's tortious conduct).

despite telephone calls, email communications, and payments in Illinois where the contract was neither negotiated nor performed in Illinois).

Turning to the second prong of the specific jurisdiction analysis, namely, whether the alleged injury arose from Defendants' forum-related activities, this requirement is also satisfied. *See Felland*, 682 F.3d at 673. The alleged breach of contract arose from Defendants' architectural services aimed at an Illinois-based business that caused injury in Illinois. *See Citadel Grp. Ltd.*, 536 F.3d at 763-64 (exercising personal jurisdiction over Arkansas defendant that contracted with an Illinois-based entity to construct a building in Arkansas); *Tamburo*, 601 F.3d at 709 (ruling that the alleged injury arose from the defendant's forum-related activities because the plaintiff's claims arose "directly out of the individual defendants' contacts with Illinois"); *WAV, Inc. v. Walpole Island First Nation*, 47 F. Supp. 3d 720, 729 (N.D. Ill. 2014) (finding that "[t]he breach of contract claim arises out of WIFN's contacts in Illinois" due to, among other things, its "maintaining continual communications over two years that were necessary to the ongoing services WIFN sought from APRIZ, performing an active role in the transaction, [and] committing to a long-term business relationship with APRIZ through a five-year contract").

As for the last part of the jurisdictional analysis, the Court finds that exercising personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice given Defendants' significant contacts with Illinois and because the alleged injury in this case was suffered by an Illinois-based business managed by an Illinois resident. *See Citadel Grp. Ltd.*, 536 F.3d at 763-64; *Lukas Mktg.*, 2013 WL 5818592, at *6; *Crisostomo v. Schneider-Kidan*, No. 16 C 6406, 2017 WL 2880893, at *5 (N.D. Ill. July 6, 2017) ("requiring [the defendant] to litigate in this forum will not offend traditional notions of fair play and substantial

justice" because "the injury occurred in Illinois, to a resident employed in Illinois, by a business registered with the Illinois Secretary of State" and "Plaintiff, as a resident of Illinois, has an interest in litigating this case in his home state"). Additionally, the parties' contract permits disputes related to the contract to be litigated in any "court of competent jurisdiction," (R. 22-1 at 5, Contract), and Defendants, who have engaged a local law firm, will not be unduly burdened by having to litigate the case in Illinois. *Bentel & Co., LLC v. Schraubenwerk Zerbst GmbH*, No. 16 C 11479, 2017 WL 3278324, at *5-9 (N.D. Ill. Aug. 2, 2017) (explaining that the fact that defendant had to litigate a case outside of its home state did not offend traditional notions of fair play and substantial justice because the parties did not include a forum selection clause in their contract and the defendant retained a Chicago-based law firm). Accordingly, the Court has personal jurisdiction over Defendants and denies their motion to dismiss for lack of personal jurisdiction.

## II.    Conditions Precedent to Litigation and Venue

In the alternative, Defendants argue that Plaintiff failed to satisfy the provision in the parties' contract that requires mediation as a condition precedent to filing suit and the Court's directive issued on August 2, 2017, to "exhaust all settlement possibilities prior to filing any additional pleadings." (R. 23, Mot. at 9-10; R. 6, Min. Entry.) At the time Defendants filed their motion to dismiss, they noted that the parties had yet to participate in mediation. (R. 23, Mot. at 10.) Since then, however, the parties have engaged in mediation with a private mediator. (R. 28, Report on Mediation; R. 30, Report on Settlement; R. 36, Min. Entry.) Plaintiff has raised this development in its response brief, but Defendants have not addressed it in their reply. (R. 42, Am. Resp. at 8-9; R. 43, Am. Reply at 1-13.) Because this issue does not relate to personal jurisdiction but instead relates to whether Plaintiff fails to state a claim, the Court must decide

14

this issue under the legal standard applicable to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Unilever United States, Inc. v. Johnson Controls, Inc.*, No. 16-CV-01849, 2017 WL 622209, at *7 (N.D. Ill. Feb. 15, 2017) (analyzing under Rule 12(b)(6) whether a contractual provision requiring good-faith negotiations before litigation should warrant dismissal of the plaintiff's complaint for failure to state a claim). Pursuant to that standard, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Tobey v. Chibucos*, No. 16-3927, 2018 WL 2210619, at *6 (7th Cir. May 15, 2018). Drawing all reasonable inferences in Plaintiff's favor and considering Plaintiff's allegations that it has satisfied all conditions of the contract, (R. 22, Second Am. Compl. ¶¶ 47-48, 57), the Court cannot conclude that Plaintiff failed to engage in the contractually-required mediation that is a condition precedent to bringing this lawsuit. *See id.*; FED. R. CIV. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."). The Court, therefore, denies Defendants' motion to dismiss on these grounds.

Finally, Defendants argue that venue is not proper in this District and that the case should be transferred to the U.S. District Court for the District of Colorado. (R. 23, Mot. at 10; R. 43, Am. Reply at 12-13.) Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of a complaint when venue is improper. FED. R. CIV. P. 12(b)(3). "Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district." *Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 WL 4263995, at *2 (N.D. Ill. Sept. 26, 2017). When considering a motion to dismiss under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (emphasis in

15

original). Thus, "the district court is not obligated to limit its consideration to the pleadings or to convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810-11 (7th Cir. 2011) (citation, internal quotation marks, and alteration omitted). The Court, however, "must resolve any factual disputes and draw all reasonable inferences in the plaintiff's favor." *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 952 (N.D. Ill. 2017). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Plaintiffs allege in their complaint that venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the underlying events giving rise to this lawsuit occurred in the Northern District of Illinois[.]" (R. 22, Second Am. Compl. ¶ 7.)

Under Section 1391(b)(2), "the test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in a particular district." *Nicks*, 260 F. Supp. 3d at 952 (citation and internal quotation marks omitted). "For events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum

16

district were part of the historical predicate for the instant suit." *Jackson v. N'Genuity Enters., Co.*, No. 14 C 2197, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014) (citation, internal quotation marks, and alteration omitted). "To determine proper venue in a breach of contract action, courts take a number of factors into consideration, including where the conduct underlying the breach occurred and where performance under the contract was to take place, and whether there was failure to make payment in a district pursuant to a contract." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015). "Where the underlying events are essentially communications made by two parties located in separate districts, the requirements of § 1391(b)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*, No. 13 C 04750, 2013 WL 5904527, at *3 (N.D. Ill. Nov. 4, 2013) (alteration, citation, and internal quotation marks omitted). Additionally, "[v]enue may be proper in more than one court[.]" *Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). Thus, "[i]f the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Caldera Pharm., Inc. v. Los Alamos Nat. Sec., LLC*, 844 F. Supp. 2d 926, 929 (N.D. Ill. 2012) (citation omitted).

Klein negotiated and signed the contract in this District. (R. 37-1, Klein Aff. at 1-3.) Defendants sent their proposal for architectural work to Plaintiff in this District, communicated regularly with Klein while he was in this District to update Plaintiff on the progress of their work, and they sent the "Added Work Agreement" to Plaintiff in this District. (*Id.* at 1-4; R. 22, Second Am. Compl. ¶¶ 32-33; R. 22-1 at 2, Contract; R. 22-1 at 14-16, Added Work Agreement.) Additionally, the event that allegedly precipitated the end of the parties'

relationship was Plaintiff's failure to pay a January 2017 invoice. (R. 22, Second Am. Compl. ¶¶ 33-35.) KA sent all invoices for architectural work to Plaintiff's office in Illinois, and Plaintiff paid the invoices from Illinois. (*Id.* ¶ 18; R. 42-1 at 7-23, Invoices.) Weighing the considerations for venue in breach of contract cases, including where the conduct underlying the breach occurred, where performance under the contract was to take place, and whether there was a failure to make a payment pursuant to the contract in a particular district, the Court concludes that a substantial part of the events giving rise to the claims in this case occurred in this District and venue is proper in this District. *See Imperial Crane Servs., Inc*, 2013 WL 5904527, at *4 ("Substantial events surrounding the purchase of the cranes occurred in Illinois, making venue in this district proper."); *Smart Oil, LCC v. DW Mazel, LLC*, No. 15 C 8146, 2016 WL 521071, at *4 (N.D. Ill. Feb. 10, 2016) (concluding that venue was proper in this District partly because a failure to pay in Illinois resulted in the breach of contract claim against the defendants).

Additionally, "absent a strong argument to the contrary, venue is proper anywhere personal jurisdiction is established." *Smart Oil, LCC*, 2016 WL 521071, at *5. Though Defendants are correct that venue might also be proper in Colorado, Section 1391(b)(2) does not require this Court to determine the best venue. *See Imperial Crane Servs., Inc.*, 2013 WL 5904527, at *4 ("Although venue might be proper in Michigan, § 1391(b)(2) does not require the court to determine the best venue for an action, but merely whether a substantial part of the events or omissions giving rise to the claim occurred in the judicial district in which the action was brought." (alteration, citation, and internal quotation marks omitted)). The Court, therefore, finds that venue is proper in this District and denies Defendants' request to dismiss the case for improper venue.

18

The Court also declines Defendants' request to transfer the case to the District of Colorado pursuant to 28 U.S.C. § 1404. (R. 23, Mot. at 10.) The only grounds Defendants advance for transfer of venue are that the project is located in Colorado and that the substantive law of Colorado governs the parties' contract. (*Id.*; R. 43, Am. Reply at 12-13.) The Court may transfer venue "[f]or the convenience of parties and witnesses," and "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The dispute concerns the architectural design Defendants were to furnish to Plaintiff and implicates documents and witnesses located where the Project was administered, which in this case, was the Northern District of Illinois. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (noting that "[w]ith respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, . . . each party's access to and distance from resources in each forum" and "the location of material events and the relative ease of access to sources of proof"). Plaintiff offers no compelling reason why the interests of justice warrant a transfer to the District of Colorado. *See id.* (noting that, for this consideration, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy" (citations omitted)). Unless the balance for transferring venue "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). Because Defendants fail to show

that convenience or interests of justice favor—much less, strongly favor—transfer to the District of Colorado, the Court denies their request to transfer this case pursuant to Section 1404.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 23) is DENIED. The parties shall appear for a status hearing on September 25, 2018, at 9:45 a.m. The parties are directed to again reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: September 11, 2018**